IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| KIMBERLY S. ALLEN, | ) Civil Action No. 4:12-3540-DCN-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## JURISDICTION

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## PROCEDURAL HISTORY

The Plaintiff, Kimberly S. Allen, filed an application for DIB October 9, 2009, alleging a disability onset date of December 22, 2008. Plaintiff requested a hearing before an administrative

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

law judge (ALJ) after her claim was denied initially and on reconsideration. A hearing was held on May 10, 2011. The ALJ issued a decision on July 6, 2011, finding that Plaintiff was not disabled. After the Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision, the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981. Plaintiff filed this action on December 14, 2012.

## **FACTUAL BACKGROUND/MEDICALS**

Plaintiff was born November 18, 1975, and completed the twelfth grade. Plaintiff has past relevant work as a fast food work and a security guard. Plaintiff alleges disability since December 22, 2008, due to a heart condition with symptoms associated therewith and obesity.

Plaintiff gave birth to her second child on December 23, 2008. She was admitted to the hospital on December 22, 2008, with indications of cardiomyopathy and moderate mitral regurgitation. The left ventricular end diastolic diameter was 7.4 cm and the left ventricular end systolic diameter was 5.0 cm. The two dimensional ventricular ejection fraction was 48%. (Tr. 228).

On February 4, 2009, Plaintiff was admitted to the hospital with complaints of shortness of breath and lower extremity swelling. (Tr. 161-243, 226). The admitting diagnosis was acute congestive heart failure and morbid obesity. (Tr. 226-227). A right heart catherization was performed on February 10, 2009, with findings of elevated right and left filling pressures, elevated transpulmonary gradient, severe pulmonary hypertension with mean PA of 55 mmHg, normal cardiac output and index, and evidence of pulmonary vasoreactivity with SLNTG. (Tr. 173-174). At the time of discharge on February 11, 2009, it was noted that "through medical management, patient's symptoms of CHF may improve. She is not considered a transplant candidate at this time

due to her body habitus." (Tr. 229). It was noted that she was able to walk without assistance and denied shortness of breath with activity. (*Id*.). The discharge diagnosis was acute congestive heart failure exacerbation related to postpartum cardiomyopathy. (Tr. 230). An echocardiogram performed on July 13, 2009, revealed a severely dilated left ventricle with a ventricle dimension diastole of 8.3 cm and systole of 6.0 cm. The left ventricular ejection fraction appeared to be about 50% with the right ventricle normal in size. (Tr. 257). The impression was severe left ventricular enlargement with left ventricular ejection fraction of lower limits of normal to borderline mildly depressed and severe mitral regurgitations. (Tr. 257). Plaintiff underwent a heart catherization on July 30, 2009, by Dr. Donald Saunders which revealed "no significant coronary disease. The left ventricle was significantly dilated. Left ventricular function is normal. The left ventricle is underfilled since it was so large. There appeared to be at least moderate mitral regurgitation. " (Tr. 302). It was recommended that she undergo mitral valve repair. (Tr. 330).

On August 5, 2009, Plaintiff underwent a mitral valve replacement. (Tr. 258). At the conclusion of the procedure a transesophageal echocardiogram was performed which revealed no mitral regurgitation, good prosthetic valve function, and an ejection fraction estimated at 45. (Tr. 259). Plaintiff was discharged on August 11, 2009, with a diagnosis of severe mitral regurgitation, Class 3 congestive heart failure, peripartum, December 2008, Type 2 diabetes mellitus, hypertension, and status post tubal ligation, December 2008. (Tr. 250). On August 30, 2009, Plaintiff went to the ER for swollen legs. (Tr. 346-350). It was noted that she had no trachycardia, no shortness of breath, no syncope or presyncope or dizziness. She received a dose of Lasix and her swelling decreased over the course of her stay. (Tr. 349). Plaintiff followed up with Dr. Saunders on September 8, 2009, with no cardiac complaints and improved shortness of breath. The physical

cardiovascular exam revealed regular rate and rhythm with crisp valve sounds, clear lungs, and no significant edema. (Tr. 374). Plaintiff returned to Dr. Saunders on March 17, 2011, for complaints of mild dyspnea and intermittent precordial chest pain that lasted "for about five minutes with exacerbating or alleviating factors." (Tr. 445). The physical examination revealed regular rate and rhythm with crisp valvular sounds, clear lungs, and no significant edema. An EKG revealed normal sinus rhythm and nonspecific ST-T wave changes. (*Id*.).

## **DISABILITY ANALYSIS**

In the decision of July 6, 2011, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since December 22, 2008, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: obesity, post partum cardiomyopathy and mitral regurgitation with replacement, and hernia (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk two hours in an eight-hour day, fifteen to thirty minutes at a time, but should have some freedom to change positions, the claimant must avoid climbing ropes, ladders, and scaffolds, crouching, kneeling, and crawling. Otherwise, the claimant can perform postural activities occasionally, the claimant should avoid unprotected

>   heights or dangerous and moving machinery, and concentrated exposure to heat, cold humidity, and fumes.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on November 18, 1975, and was 33 years old, which is defined as a younger individual age 18-44, on the alleged onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 22, 2008, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-26).

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. *Myers v. Califano*, 611 F.2d 980, 982-83 (4th Cir. 1988); *Richardson v. Califano*, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed

verdict. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **PLAINTIFF'S SPECIFIC ARGUMENTS**

### **Listing 4.02**

Plaintiff contends that the ALJ erred at step three of the sequential evaluation process because substantial evidence does not support her conclusion that Plaintiff's Class II congestive heart failure did not meet or equal Listing 4.02. Additionally, Plaintiff argues that the ALJ essentially ignored the issue of Plaintiff's obesity at step three.

Defendant argues that the ALJ properly determined that Plaintiff did not meet or medically equal Listing 4.02. Defendant asserts that even if Plaintiff suffers from congestive heart failure, she cannot establish the remaining elements of the listing as her treatment notes do not support that she possessed such symptoms. Specifically, Defendant argues that the record fails to indicate that Plaintiff suffered from systolic or diastolic failure required by part A and there is no indication that her heart condition resulted in persistent symptoms of heart failure that very seriously limited her ability to independently initiate, sustain or complete actions of daily living as required by part B of the listing. Thus, Defendant argues that Plaintiff does not meet either subsection A or B of the Listing.

The "Listings," found at 20 C.F.R. part 404, subpart P, appendix 1, "is a catalog of various

disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.' " *Bennett v. Sullivan*, 917 F.2d 157, 160 (4th Cir.1990) (*quoting Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)). A claimant's impairment meets a Listing if "it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404 .1525(c)(3). When a claimant satisfies a listing by meeting all its specified medical criteria, he presumably qualifies for benefits. *See Bennett*, 917 F.2d at 160. The impairment medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." Id. § 404.1526(a). If a claimant has a listed impairment, but: 1) does "not exhibit one or more of the findings specified in the particular listing, or" 2) exhibits "all of the findings, but one or more of the findings is not as severe as specified in the listing," the claimant's impairment is medically equivalent to the listing if the claimant has "other findings related to [his or her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1).

At step three, to determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, the ALJ must identify the relevant listed impairments and then compare the listing criteria with evidence of claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986). In *Cook v. Heckler*, the court held that "the ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of [the claimant's] symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook*, 783 F.2d at 1173.

The disability listing at issue, 4.02, lists the following

requirements:

    A. Medically documented presence of one of the following:

        1. Systolic failure, with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

        2. Diastolic failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

    B. Resulting in one of the following:

        1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living ...; or

        2. Three or more episodes of acute congestive heart failure within a consecutive 12–month period, with evidence of fluid retention ..., requiring acute extended physician intervention such as hospitalization ..., separated by periods of stabilization; or

        3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to

            a. Dyspnea, fatigue, palpitations, or chest discomfort; or
            b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

            c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

            d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. § 404, Subpt. P, App. 1, § 4.02B.

In this case, the ALJ found as follows with regard to step three:

> In so finding, the undersigned has specifically considered Listing 4.02. However, the medical evidence of record fails to indicate that the claimant suffered from systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or diastolic failure with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure).
>
> Moreover, there is no indication that the claimant's heart condition resulted in persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain or complete activities of daily living in an individual for whom an MC, has concluded that the performance of an exercise test would present a significant risk to the individual; or three or more separate episodes of acute congestive heart failure within a consecutive 12-month period with evidence of fluid retention from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization; or the inability to perform on an exercise tolerance test; or three or more consecutive premature ventricular contractions (ventricular tachycardia) or increasing frequently of ventricular ectopy with at least pressure below the baseline systolic blood pressure or the proceeding systolic pressure measure during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload, or signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

(Tr. 13).

In the next step of the sequential evaluation, the ALJ further discussed Plaintiff's heart condition, as well as, her other medical conditions. The ALJ found that claimant had significant cardiac problems acutely following her pregnancy, but that the records indicated she improved with treatment. The ALJ noted that on March 2009, Plaintiff stated she felt so good being on her current medications that she was thankful to her physicians. In July 2009, the ALJ found that Plaintiff only

9

had a trace of edema in her lower extremities, her lungs were clear, she had an ejection fraction of 50% and severe mitral regurgitation was confirmed so that in August 2009, Plaintiff underwent mitral valve replacement. The ALJ cited to the medical notes of September 2009, which revealed that Plaintiff's shortness of breath had considerably improved since her surgery and there was no significant edema on physical examination. The ALJ found that the results of a consultative examination on March 23, 2010, revealed no edema of her legs or feet, her peripheral pulses were intact, she walked without a cane or use of supportive devices with a normal gait, she was able to pick up objects from the floor when bending from the waist, and there was no tenderness, redness, weakness, swelling, spasms, tremors, or abnormal development of any muscle or joint groups. (Tr. 15, 414-415). The ALJ noted that the record reflected that Plaintiff had been noncompliant with her Coumadin therapy and follow up appointments and that there were no more follow up notes with the Plaintiff's cardiologist until March 2011. However, the ALJ cited to the May 2010 office notes of Plaintiff's primary care physician noting that Plaintiff denied shortness of breath and that there was no lower extremity edema or examination.   The ALJ noted that Plaintiff reported to her cardiologist in March 2011, that she had complaints of mild dyspnea and intermittent precordial chest pain but that the pain only lasted about five minutes, an EKG was normal, and a myocardial perfusion study noted no overt evidence of ischemia.

     While the evidence Plaintiff discusses in her argument could potentially support a finding that her impairments meet or medically equal Listing 4.02, it is not enough to deny the ALJ's non-disability findings. The role of the federal judiciary in reviewing decisions made under the Social Security Act is limited. See 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock*, 483 F.2d at 775.

**Combination of impairments**

Additionally, Plaintiff argues "[t]he ALJ erred at step three by failing to conduct an actual listing analysis that included the combined effect of Ms. Allen's multiple severe impairments in terms of medical equivalence." (Plaintiff's brief, p. 10). Plaintiff asserts the ALJ provided no analysis of the combined effect of her multiple impairments failing to comply with the mandate of *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). Plaintiff argues that the ALJ gave no indications that "she considered the issue of medical equivalence and provided no rationale for why Ms. Allen's severe morbid obesity, Class III Congestive Heart Failure, cardiomyopathy, insulin-dependent diabetes mellitus, hypertension, lower extremity edema, shortness of breath, hernia, and mitral valve replacement were not of equal medical significance to Listing 4.02." (Plaintiff's brief, p. 11). Defendant argues that the ALJ adequately considered and evaluated the combined effects of claimant's impairments, where, as here, the ALJ summarized claimant's medical records as to each impairment, and stated that she considered them in combination.

In order for a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination ...." *Green v. Chater*, 1995 U.S.App. LEXIS 21970, *7, 1995 WL 478032 (4th Cir.1995) (*citing Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986)). When dealing with a claimant with more than one impairment, the Commissioner "must consider the combined effect of a claimant's impairments and not fragmentize them." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted). This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." *Walker,* 889 F.2d at 50 (citing *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir.1985)). *But see, Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011); *Browning v. Sullivan*, 958

F.2d 817, 821 (8th Cir. 1992); and, *Gooch v. Secretary of Health & Human Services*, 833 F.2d 589, 592 (6th Cir. 1987). Whether or not the impairments are found to be severe, the ALJ must consider the severe and nonsevere complaints and impairments in combination in determining the Plaintiff's disability. Furthermore, "[a]s a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker*, 889 F.2d at 50. The ALJ's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability process." *20 C.F.R. § 404.1523.*

In this case, the ALJ found that Plaintiff's obesity, post partum cardiomyopathy and mitral regurgitation with replacement, and hernia were serve impairments. At step three of the sequential evaluation, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." (Tr. 13). Unlike the ALJ in *Walker* and its progeny, the ALJ in this action discussed each of Plaintiff's impairments and performed a detailed RFC analysis that demonstrates the ALJ considered Plaintiff's impairments in combination. The ALJ's decision accounted for Plaintiff's combination of impairments in determining that Plaintiff had the RFC to perform sedentary work with the following restrictions: "the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk two hours in an eight-hour day, fifteen to thirty minutes at a time, but should have some freedom to change positions, the claimant must avoid climbing ropes, ladders, and scaffolds, crouching, kneeling, and crawling. Otherwise the claimant can perform postural activities occasionally, the claimant should avoid unprotected heights or dangerous and moving machinery, and concentrated exposure to heat, cold, humidity, and fumes. (Tr. 14). The

ALJ states that she considered the entire record and all the symptoms. (*Id.*). In finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments, she discussed in detail Plaintiff's heart condition, obesity, and hernia. The ALJ discussed Plaintiff's heart condition and evaluated it under Listing 4.02, discussed her obesity and why she did not find that it exacerbated Plaintiff's cardiac condition, and discussed her hernia. The ALJ concluded as follows:

> In sum, the above residual functional capacity assessment is supported by the weight of the evidence of record. The residual functional capacity is consistent with the opinion of the state agency psychological consultants and the overall evidence of record. The residual functional capacity considers the claimant's cardiac condition and prescription medications, as well as her obesity and hernia. Specifically, the residual functional capacity takes into account limits on heights and hazards, fumes, temperature extremes, and humidity, in consideration of the claimant's heart condition, medication, and allegations of shortness of breath supported in the record. Moreover, the undersigned has provided the claimant with an option to change positions as needed. Likewise, in consideration of the claimant's obesity and hernia her postural activities have been limited. However, the evidence of record as a whole, for the reasons explained above, does not support a finding that the claimant was incapable of all work activity.

(Tr. 17).

The court finds the ALJ's discussion and analysis to be sufficient to demonstrate that she considered Plaintiff's impairments in combination. The decision includes sufficient findings regarding the combination of his impairments for the court to properly review the ALJ's conclusion on this issue. See Thornsberry v. Astrue, C/A No. 4:08–4075–HMH–TER, 2010 WL 146483, *5 (D.S.C. Jan.12, 2010) (unpublished) ( "Accordingly, the court finds that while the ALJ could have been more explicit in stating that his discussion dealt with the combination of Thornsberry's

impairments, his overall findings adequately evaluate the combined effect of Thornsberry's impairments. Any error on the part of the ALJ in failing to use explicit language is harmless."). When considering whether the ALJ properly considered the combined effect of impairments, however, the decision must be read as a whole. *See Brown v. Astrue*, No. 10–1584, 2012 WL 3716792, \*6 (D.S.C. Aug.28, 2012) ("Accordingly, the adequacy requirement of Walker is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments.") (*citing Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at \*3 (4th Cir. Aug.14, 1995)).Though a more thorough analysis may be required in some cases, Plaintiff fails to demonstrate how any additional discussion could have produced a different result. The ALJ sufficiently addressed Plaintiff's combined impairments in her RFC analysis to enable the court to properly review her conclusion, including the combined effects, and there is substantial evidence to support the ALJ's decision in this regard.

**Obesity**

Further, Plaintiff argues that the ALJ failed to properly factor in her morbid obesity at step three of the sequential evaluation. The Defendant asserts that the ALJ properly considered Plaintiff's obesity. In relation to her obesity, the ALJ found the following:

> With regard to the claimant's obesity, the record reflects that in March 2010, the claimant was 5'7", weighed 360 pounds, and had a resulting Body Mass Index (BMI) of 56.4. The undersigned has evaluated this impairment according to the requirements of Social Security Ruling 02-1p. The medical evidence confirms that the claimant has a body mass index (BMI) of greater than 35, which represents "Extreme" obesity. According to the National Institutes of Health (NIH), it is individuals of "extreme" obesity, as defined above, who suffer the greatest risk of developing obesity related impairments. The record reflects that despite her obesity, the claimant was able to move about generally well and sustain consistent functions. The record indicates that the claimant had a normal gait and was able to pick items up off the floor. While the record reflects the claimant suffered from a cardiac condition, it also indicates that it was attributable to the claimant's pregnancy. (Exhibit 2F). In fact, there is no

> indication that the claimant's obesity exacerbated the claimant's cardiac condition, diabetes, or pulmonary efficiency. After a thorough review of the evidence of record, the undersigned finds that the claimant's obesity does not have a negative effect upon the claimant's ability to perform routine movement beyond the residual functional capacity stated above or upon her ability to sustain function over an 8-hour day.

(Tr. 15-16).

The ALJ considered Plaintiff's obesity albeit not at step three. However, the Fourth Circuit has held that it is not always necessary for the ALJ to present evidence under a particular step, as long as it is possible, from reading the ALJ's decision in its entirety, to determine whether there was substantial evidence to support the ALJ's conclusions. *See Patterson v. Calvin*, 2013 WL 4441986 (D.S.C. Aug. 15, 2013) *quoting McCarthy v. Apfel*, 28 F. App'x 277, 279–80 (4th Cir.2002) (unpublished) (finding that "the ALJ need only review medical evidence once in his decision" and, therefore, the ALJ's thorough analysis of the medical evidence at step four was sufficient to determine whether claimant satisfied step three). [2]

The ALJ set out the medical evidence and the evidence she relied on to reach her decision. Within her decision, the ALJ discussed Plaintiff's heart condition, her obesity, and her hernia. There is substantial evidence to support the ALJ's decision based on her discussion of the evidence throughout her decision.

---

[2] *See also Stevenson v. Astrue*, No. 10–cv–01565, 2011 WL 4501914, at *4 (D.S.C. Sept.28, 2011) (finding it was not reversible error where the ALJ sufficiently addressed whether the claimant satisfied step three in his analysis of the evidence "in the latter portion of his decision"); *Buchanan v. Astrue*, No. 10–cv–167, 2011 WL 5439087, at *5 (E.D.N.C. Aug.15, 2011) ("[A]n ALJ's step-three finding will be upheld, even where she fails to explicitly address why specific listings were not met, where she has discussed in detail the evidence presented and adequately explained her consideration thereof.").

## **CONCLUSION**

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler,* 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court recommends that the Commissioner's decision be AFFIRMED.

                Respectfully Submitted,

                s/Thomas E. Rogers, III
                Thomas E. Rogers, III
                United States Magistrate Judge

December 9, 2013
Florence, South Carolina